IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA R.,[1]                                          No. 3:20-cv-01778-HZ

                    Plaintiff,            OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.


Lisa R.J. Porter
JP Law PC
5200 SW Meadows Road, Suite 150
Lake Oswego, OR 97035

       Attorney for Plaintiff

Renata Gowie
Civil Division Chief
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

David J. Burdett
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Joshua R. brings this action seeking judicial review of the Commissioner's final

decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI").

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C.

§ 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further

administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on December 6, 2017, alleging an onset date of April

25, 2017. Tr. 52.[2] Plaintiff's date last insured ("DLI") is December 31, 2019. His application was

denied initially and on reconsideration. Tr. 15.

      On October 17, 2019, Plaintiff appeared with counsel for a hearing before an

Administrative Law Judge ("ALJ"). Tr. 30. On March 31, 2020, the ALJ found Plaintiff not

disabled. Tr. 25. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on "Cluster Headaches, Depression, [and] Anxiety." Tr.

186. At the time of his alleged onset date, Plaintiff was 30 years old. Tr. 54. He has some college

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10.

and past relevant work experience as a "customer service representative," "collection clerk," and "video rental clerk." Tr. 24, 187.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairment: "cluster headaches." Tr. 17. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant should not climb ladders, ropes, or scaffolds; and should not be exposed to hazards, such as unprotected heights and exposed heavy machinery." Tr. 19. The ALJ concluded that with these limitations Plaintiff could perform his past relevant work as a customer service representative, collection clerk, and video rental clerk. Tr. 24. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 25.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) failing to develop the record as to Plaintiff's mental health impairments; (3) improperly rejecting the medical opinion of Plaintiff's treating physician Cara Rozell, DO; (4) improperly rejecting the lay witness testimony of Plaintiff's mother, Martha H; and (5) failing to include all of Plaintiff's limitations in the RFC at Step Four. The Court agrees.

## I.    Subjective Symptom Testimony

Plaintiff argues the ALJ erred in discounting his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where

the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff last worked from 2010 to 2012 as a customer service representative for Netflix. Tr. 38. He stopped working due to his medical issues. Tr. 38. During this time, Plaintiff experienced cluster headaches that would last six months at a time and then disappear for six

months at a time. Tr. 39. Before Netflix, Plaintiff worked a different customer service job for Wells Fargo, which he was let go from because his medical conditions kept him from showing up to work every day. Tr. 40. Prior to Wells Fargo, Plaintiff worked in technical support for a company called Stream for six months and left due to his medical conditions. Tr. 41.

Plaintiff's headaches began in high school. Tr. 44. They are completely debilitating. Tr. 211. The pain is intense, he loses feeling in his extremities, and he cries and yells out in pain. Tr. 211. It is difficult for him to stand, walk, or form words, and he often vomits during the peak of the headache. Tr. 221. Afterward, he is completely exhausted. Tr. 211. During a headache cycle, the frequency of his headaches can ramp up to eight or nine throughout the day. Tr. 47–48. The longest he has gone headache-free was three months. Tr. 47.  Plaintiff has only identified one "absolute" trigger—alcohol. Tr. 46. So, he does not drink. Tr. 46.

During a headache cycle, Plaintiff's quality of life is poor. Tr. 212. He spends most of his day in bed, getting up only if he needs to. Tr. 212. He is afraid to leave the house because he might get stuck somewhere with a headache. Tr. 212. The headaches are so painful they wake him up during the night. Tr. 212. Plaintiff has no problem with his personal care, is able to manage his own finances, can prepare frozen dinners or box meals, grocery shop with family, and is responsible for cleaning his own part of his house and doing laundry. Tr. 213–15. But during headaches, he does not "do anything and rel[ies] on family." Tr. 214. He goes out once or twice a week. Tr. 214. He does not drive because he no longer trusts himself behind the wheel after almost causing an accident. Tr. 214.  Plaintiff testified that he no longer has friends. Tr. 45, 215. And he has lost all desire to engage in social activities because of his pain. Tr. 216. He enjoys reading, but he has to stop when he has a cluster headache. Tr. 45. He also spends time on

the computer and watching television. Tr. 46, 215. Plaintiff no longer does outdoor activities—

like hiking and camping—because he is afraid. Tr. 215.

The ALJ gave three reasons for rejecting Plaintiff's subjective symptom testimony: (1)

Plaintiff's activities of daily living; (2) Plaintiff's course of conservative treatment; and (3) lack

of support from the objective medical evidence. Because these reasons are not clear and

convincing, the ALJ erred.

A.      Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason

for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

There are two grounds for using daily activities to form the basis of an adverse credibility

determination: (1) when activities meet the threshold for transferable work skills and (2) when

activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

2007). However, "disability claimants should not be penalized for attempting to lead normal

lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and

"the mere fact that a plaintiff has carried on with certain daily activities, such as grocery

shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683,

688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to

impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed

limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and

documents in the record or take these out of context in order to reach his conclusion on the

claimant's credibility. *Id.* at 722–23.

The ALJ found that "the claimant's statements regarding his activities of daily living are

inconsistent with his allegations of disability" and "support a level of functioning greater than

alleged." Tr. 22. In support of this finding, the ALJ cited Plaintiff's ability to care for his personal hygiene independently, prepare meals, perform household chores, go shopping for groceries, and operate a computer. Tr. 22. The ALJ also noted that Plaintiff can manage his finances and engages in hobbies like reading, watching television, playing video games, playing guitar, camping, and hiking. Tr. 22. She also cited Plaintiff's statement in his function report that he has no issues with instructions and gets along fine with authority figures. Tr. 22. Finally, she noted that Plaintiff was in school in 2017.

The ALJ's reasoning is not clear or convincing. First, the ALJ misstates the record. In his function report, Plaintiff described significant limitations with many of the cited activities. For example, Plaintiff noted that during headaches he cannot reliably do household chores and instead relies on his family. Tr. 214. He only grocery shops with family and does not drive anymore because he does not trust himself. Tr. 214. He clarified that he does not often do outdoor activities—like camping and hiking—because he is afraid. Tr. 215. He is unable to concentrate for longer than five to ten seconds during headaches, which occur frequently throughout the day. Tr. 211, 216. He cannot read when he has a cluster headache. Tr. 45.

Second, the claimed activities are not inconsistent with Plaintiff's claimed limitations. Plaintiff's limitations are most significant during a headache cycle, when he has "zero quality of life" and "stay[s] in bed only getting up if [he has] to." Tr. 212. Plaintiff's ability to care for himself, make simple meals, manage his finances, operate a computer, and engage in some hobbies do not conflict with his allegations of a disabling impairment that is cyclical with short periods of excruciating pain and some longer periods of remission. Tr. 47–48 (describing pattern of headaches). Thus, the ALJ erred in rejecting Plaintiff's subjective symptom testimony as inconsistent with his quite limited activities of daily living.

B.      Conservative Treatment

An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks omitted). Conservative treatment and failure to seek out treatment can be "powerful evidence regarding the extent to which [a claimant] is in pain." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, no adverse credibility finding is warranted where a claimant has a good reason for failing to obtain treatment. *See Orn*, 495 F.3d at 638. Gaps in medical treatment can also support an adverse credibility determination as long as the failure to obtain treatment is not due to the claimant's lack of funds or another "good reason[]." *Id.* at 638; *see also* SSR 16-3p, 2016 WL 1119029, at *8-9 (Commissioner will not find an individual's symptoms inconsistent with a lack of treatment without considering possible reasons, including the inability to pay for treatment).

The ALJ found that "treatment of the claimant's alleged impairments during the relevant period were limited to conservative treatment options" and that the "lack of progressive treatment for the claimant's alleged impairments demonstrated during the relevant period appears to be more consistent with the residual functional capacity than with the claimant's allegations." Tr. 21–22.

As to the Plaintiff's mental health impairment, the ALJ's reasoning is clear and convincing. Despite reporting significant mental health symptoms to providers in a few places in the record, Plaintiff has not pursued treatment for his mental health. For example, in August 2018, Plaintiff reported symptoms or severe depression and suicidal ideation. Tr. 514. He was

prescribed Zoloft, Tr. 516, but Plaintiff did not attend his initial appointment with a counselor, Tr. 517–18. Ten months later at an appointment with his primary care provider, Plaintiff declined to take a depression screening test and reported that he did not go to counseling, that Zoloft did not help, and that he was not interested in any further treatment. Tr. 536. Thus, the ALJ did not err in finding that Plaintiff's treatment was not consistent with his allegations of a disabling mental health condition.

As to the Plaintiff's headaches, however, the ALJ's reasoning is not clear or convincing. Plaintiff has consistently tried various treatments for his headaches as recommended by his providers, but he has not had any success. For example, Plaintiff tried Imitrex, Pamelor, prednisone, verapamil, oxygen, Namenda, and lithium, but no medications have prevented or treated his headaches without significant side effects. Tr. 326, 337, 347, 350, 478, 326, 533. Plaintiff also tried an occipital nerve block, which failed. Tr. 43, 525, 533. Except for a brief period where Plaintiff was unable to pursue further treatment because of loss of insurance, Tr. 489, there are no recommend treatments for Plaintiff's headaches in the record that Plaintiff has declined to pursue. Accordingly, the ALJ erred.

C.    Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between a claimant's testimony and the objective medical record is a valid reason to discount their testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And under certain circumstances, the ALJ

can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on a physical basis" by claimant's physician); *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). However, "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ found that "the objective evidence, in the form of examinations, suggests a level of function greater than one alleged by the claimant." Tr. 22. Specifically, the ALJ concluded that examinations were "unremarkable," revealing normal eye movements, normal cognitive signs, and no abnormalities. Tr. 22.

This is the only reason left for rejecting Plaintiff's allegations, and the ALJ cannot reject subjective symptom testimony solely because it is unsupported by the objective medical evidence. Further, the ALJ's conclusions do not accurately reflect the record. Plaintiff consistently reports his headaches and associated symptoms to his doctors. As early as 2007, Plaintiff reported having several debilitating headaches per 24-hour period, lasting 15 minutes to an hour, and causing nausea, vomiting, and disorientation. Tr. 333. He continued to report similar headache cycles through the date of the hearing, which eventually increased in frequency and included symptoms like shaking and the loss of feeling in his extremities. Tr. 320, 314, 533. Plaintiff's reports of few or mild headaches between cycles is consistent with his testimony and his condition. Tr. 326, 314. Indeed, he was diagnosed with classic cluster headaches, which are

episodic in nature. [3] Tr. 478. Accordingly, the ALJ erred in discounting Plaintiff's subjective symptom testimony.

## II.    Failure to Develop the Record

Plaintiff also argues that the ALJ failed to develop the record as to Plaintiff's mental health conditions. In Social Security cases, "the ALJ has 'a special duty to fully and fairly develop the record and assure that the claimant's interests are considered.'" *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to both the represented and the unrepresented claimant. *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996). However, the duty to develop the record is only triggered where "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). An ALJ that substantially relies on medical expert opinions yet dismisses those expert's equivocations and concerns over the lack of a complete record may fail his independent duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150–51 (9th Cir. 2001).

Plaintiff argues that the ALJ should have developed the record as to Plaintiff's mental health impairments, suggesting that the record may have been ambiguous or inadequate. The Court agrees.  In arguing that there was no ambiguity as to whether Plaintiff's mental health condition was nonsevere, the Commissioner emphasizes that Plaintiff did not engage with mental health therapy or regular medication management and that there were no objective findings

---

[3] According to the Merck Manual, patients experience more than one attack per day for one to three months at a time, usually—but not always—followed by a period of remission. *The Merck Manual* 1720 (19th ed. 2011). The pain is "excruciating," and lasts from thirty minutes to one hour. *Id*. Diagnosis is based on clinical evaluation and distinctive symptom pattern, and the primary treatments are medication and nerve blocks. *Id.*; *see also* Tr. 478 (The International Classification of Headache Disorders requirements for the diagnosis of cluster headaches).

regarding Plaintiff's mood. Def. Br. 11. But this argument both misstates the evidence and the

Social Security Administration's own requirements for assessing mental health conditions.

Whether a mental health impairment is severe or not depends on four factors, none of which ask

whether Plaintiff engaged with therapy or took medication. *See* 20 C.F.R. §§ 404.1520a(b)–(c),

416.920a(b)–(c) (the "paragraph B" criteria are (1) understanding, remembering, or applying

information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and

(4) adapting or managing oneself). Moreover, there are at least two appointments where Plaintiff

reported significant mental health symptoms to providers. In November 2017, Plaintiff reported

to a doctor that he was very depressed and sold his gun so he would not hurt himself. Tr. 314.

August 2018, Plaintiff reported feeling like his life was "not worth living" and that he "wished

he was dead." Tr. 514. He was diagnosed with severe depression with suicidal ideation. Tr. 514.

There are no medical opinions as to Plaintiff's mental health conditions. The ALJ could

not rely on the state agency physicians' findings that Plaintiff's conditions are nonsevere as they

did not have access to all of the above-cited records when formulating their opinions at the initial

and reconsideration stages of the analysis. *See Duarte v. Saul*, No. 2:19-CV-01019 AC, 2020

WL 5257597, at *5 (E.D. Cal. Sept. 3, 2020) (where significant medical events post-dated the

reports of the state agency physicians and no other expert reviewed the entire record, "the ALJ

had a duty to identify the record before him as deficient—and to then develop the record"). The

record is, therefore, both ambiguous and inadequate, and the ALJ should have developed the

record further as to Plaintiff's mental health impairments. *See Quevedo v. Colvin*, No. CV 13-

6146-PLA, 2014 WL 3529435, at *5 (C.D. Cal. July 15, 2014) (finding the ALJ erred in

determining the plaintiff's mental impairment nonsevere and that ALJ's duty to develop the

record was triggered because the plaintiff clearly established the presence of a mental

impairment by alleging it in her original request, reporting symptoms to providers, and obtaining a diagnosis of depression).

### III.    Medical Opinion Evidence

Plaintiff argues that the ALJ erred in rejecting the opinion of Cara Rozell, DO. Dr. Rozell was Plaintiff's treating provider beginning in 2017, and she saw him one to two times per year. Tr. 559. She completed a medical source statement regarding Plaintiff's headaches on October 9, 2019. Tr. 559–62. Dr. Rozell diagnosed Plaintiff with severe cluster headaches, lasting twenty to sixty minutes and occurring three to six times over a twenty-four our period for weeks or days at a time. Tr. 559. The only trigger she identified was alcohol. Tr. 560. She opined that Plaintiff would be incapable of even low stress work because he is incapacitated during his headaches. Tr. 560. She also opined that Plaintiff would need to take unscheduled hour-long breaks every one to four hours and would be off task 25% or more of the workday. Tr. 561. She determined he would miss more than four days of work per month. Tr. 561.

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain to how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ found that Dr. Rozell's opinion was not persuasive. Tr. 23. She determined that Dr. Rozell overestimated the limiting effects of Plaintiff's impairments. Tr. 23. The ALJ concluded that Dr. Rozell's opinion is unsupported by and inconsistent with the medical record, which showed unremarkable findings. Tr. 23. The ALJ also found that Dr. Rozell's opinion was inconsistent with Plaintiff's "robust" activities of daily living. Tr. 23.

The ALJ's reasoning is not supported by substantial evidence. Contrary to the ALJ's findings, Dr. Rozell's assessment is consistent with the medical record. For example, Dr. Rozell described Plaintiff's headaches as occurring three-to-six times per day for weeks or months at a time—which is generally consistent with Plaintiff's reports to multiple providers. Tr. 350 (reporting to Dr. Jardini in 2011 that he has headaches several times in a 24-hour period, and that alcohol is a trigger), 478 (2013 report to Dr. Stigler that he has hour-long cluster headaches multiple times a day for six months at a time), 314 (2017 reporting headache cycles lasting months at a time), 533 (2018 reporting several headaches per day during the current cycle, which started four months earlier). She also opined that he would be incapacitated during headaches, which is consistent with Plaintiff's description to providers. *See* Tr. 333, 320 (headaches cause pain, nausea, vomiting, disorientation, loss of feeling in extremities). Further, the ALJ's characterization of Plaintiff's activities as "robust" is not supported by the record as discussed

above. *See supra* Part I.A. Accordingly, the ALJ erred in finding Dr. Rozell's opinion unpersuasive.

## IV.    Lay Witness Testimony

Plaintiff argues the ALJ erred in rejecting the testimony of his mother, Martha H. Martha filled out a Third-Party Function Report about Plaintiff's conditions. She described sudden, debilitating headaches that require Plaintiff to stop whatever he is doing and retreat to a dark area for 15 to 30 minutes multiple times a day. Tr. 228. She also noted that Plaintiff has nausea, vomiting, and numbness in his extremities. Tr. 228. He does not drive or leave the house because of the headaches. Tr. 228. According to Martha, lights, heat, hunger, stress, and loud noises can all trigger him. Tr. 228. She described problems with his personal care, including difficulty showering, shaving, and combing his hair. Tr. 229. Martha wrote that Plaintiff's vision is affected by his headaches and that he does not shop in stores. Tr. 231. She also described difficulty focusing when he is in pain. Tr. 231. According to Martha, Plaintiff cannot read, play video games, or listen to music much anymore—and if he does, it is only for a short period of time. Tr. 232.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still

articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526

F.Supp.3d 858, 869 (D. Or. 2021).

      The ALJ must give reasons "germane to the witness" when discounting the testimony of

lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's

testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded*

*on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for

rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting

similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not

describe any limitations not already described by the claimant, and the ALJ's well-supported

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony,"

any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

      The ALJ failed to address Martha's testimony, and this error was not harmless. [4] The ALJ

has not given adequate reasons for rejecting the Plaintiff's testimony or any other witness.

Further, Martha describes some limitations that are not described by Plaintiff, including

additional triggers, difficulty with his personal care, and an inability to engage in his hobbies.

Accordingly, the ALJ erred in her consideration of Martha's lay witness testimony.

## V.    Step Four

      Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC at Step Four. The

residual functional capacity (RFC) is the most a person can do, despite his physical or mental

limitations. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all

medically determinable impairments, including those that are not "severe," and evaluate "all of

---

[4] In its response brief, the Commissioner only argues that the ALJ's reasons for rejecting
Plaintiff's testimony apply with equal force to the lay witness testimony. Def. Br. 10.

the relevant medical and other evidence, including the claimant's testimony." *Id.*; SSR 96-8p.  At

step four, the ALJ determines whether the claimant can perform past relevant work given his

RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work as it

was actually performed *or* as it is generally performed in the national economy, the claimant is

not-disabled within the meaning of the Act, thus concluding the sequential evaluation process.

*See, e.g.*, *Tommasetti,* 533 F.3d at 1042–43; SSR 82-61.  The ALJ may use two different sources

of information to define how a claimant's past relevant work is actually performed: "a properly

completed vocational report . . . and the claimant's own testimony." *Pinto v. Massanari*, 249

F.3d 840, 845 (9th Cir. 2001) (citing SSR 82-61, SSR 82-41).

Because the ALJ erred in rejecting the testimony of Plaintiff and Martha H. and the

medical opinion of Dr. Rozell, the ALJ's RFC was deficient and did not incorporate all of

Plaintiff's limitations. Had the ALJ properly considered this evidence and incorporated these

limitations into the RFC, the ALJ may have found Plaintiff disabled. *See* Tr. 50 (Vocational

Expert testifying that Plaintiff would not be employable if he would miss more than two days of

work per month or be off task twenty-percent of the time). Thus, the ALJ erred at Step Four.

## V.    Remand

The decision whether to remand for further proceedings or for immediate payment of

benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test.

*Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has

three steps).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence,

whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020.  Second, the record

must be fully developed, and further administrative proceedings would serve no useful purpose.

*Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

Remand for further proceedings is the proper course in this case. Dr. Rozell's opinion is no longer entitled to controlling weight under the regulations, and the opinions of the reviewing physicians conflict with the opinion of Dr. Rozell. The state agency physicians found Plaintiff's conditions nonsevere. Tr. 65, 75. Medical expert and reviewing neurologist Justin Willer, M.D., who completed medical interrogatories regarding Plaintiff's headaches, confirmed Plaintiff's diagnosis of cluster headaches and opined that he would not have any limitations during headache-free intervals and few other exertional limitations during a headache cycle. Tr. 577–83. In addition, the precise frequency and duration of Plaintiff's headache cycles has varied throughout the record. *Compare* Tr. 317 (headache cycles last five months and then pain free for several weeks) *with* Tr. 314 (has headache cycles for three months and then is headache free for two months, steadily worse last few years with only three to four months pain-free each year). Accordingly, the Court remands this case for further proceedings.

///

///

///

///

///

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED

for further administrative proceedings.

IT IS SO ORDERED.

DATED:___April 8, 2022_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge